*851 OPINION.
Maequette:
The Commissioner filed a plea in bar of tl\e right of the taxpayer to maintain its appeal as to the year 1917, on the ground that “ The Commissioner of Internal Revenue has not since the enactment of the Revenue Act of 1924 proposed the assessment of a deficiency tax for the year 1917, nor has he rejected a claim for the abatement of a jeopardy assessment made for a deficiency tax for the year 1917.”
The evidence in this appeal discloses that the tax for the year 1917, involved herein, was assessed in March, 1923, under the provision of section 250 (d) of the Revenue Act of 1921. The taxpayer filed a claim for the abatement of the additional tax, and after a hearing of the claim for abatement, had before the Committee on Appeals and Review, the Commissioner on January 8, 1925, mailed to the taxpayer a letter which is in part as follows:
You are adyisecl that after a thorough review of your case, the Bureau holds that on the basis of comparative data, no abnormality affecting net income has been disclosed which would bring your case within the scope of Paragraph (d) of Section 827. Furthermore, the audit of your case discloses no exceptional hardship evidenced by gross disproportion between the tax computed without the benefit of Section 328 and the tax computed by refer *852 ence to the representative corporations specified in that Section. The determination of your tax liability for 1917, as set forth in office letter dated March 24, 1924, is therefore, sustained.
In accordance with the above conclusions, your claim for the abatement of $8,030.98 income and profits taxes for 1917 will be rejected.
In our opinion, the action of the Commissioner, as set forth in the letter of January 8, 1925, was a final determination of the income and profits tax due from the taxpayer for the year 1917, from which the taxpayer has the right of appeal to this Board. Appeal of Joseph Garneau Co., 1 B. T. A. 75; Appeal of Terminal Wine Co., 1 B. T. A. 697.
The second issue raised by this appeal is whether or not the Commissioner erred in reducing the taxpayer’s invested capital for the years 1917 and 1918 by the accumulated depreciation on its farm buildings and the accumulated farm operating losses. The evidence establishes that the taxpayer purchased the farm land in question as a necessary incident to the purchase of a tract of timber. The land, had little value and was not salable, and the taxpayer, therefore, in order to make it salable, erected buildings and fences thereon, and otherwise improved it. This occurred about the year 1910, and from that time, up to and including the year 1918, the taxpayer cultivated and operated the land as a farm, although farming was not in any way a part of its regular business.
The expenditures made by the taxpayer in improving the land were clearly of a capital nature, but we can not hold that the taxpayer should be permitted to capitalize the losses sustained from year to year in the operation of the farm. The cost of' the farm, with its improvements, became a part of the taxpayer’s invested capital, but the operating losses should have been taken into consideration each year in determining the taxpayer’s profit or loss from its entire business. The improvements on the farm were subject to exhaustion, wear and tear, like any other of the taxpayer’s depreciable assets, and, as the exhaustion, wear and tear thereof occurred, it should have been accounted for in the same manner as the exhaustion, wear and tear of the other assets. We are of the opinion that the Commissioner properly charged the accumulated depreciation and farm operating losses against the taxpayer’s accumulated earnings, and that invested capital should be reduced accordingly.
The next question is whether or not the profit of $2,267.53, realized by the taxpayer on the sale of timber rights to Halley in the year 1916, was income in that year or should be allocated over the period in which the several notes representing the deferred payments were paid.
*853 We see no reason for holding that the sale was otherwise than for cash or its equivalent. The deferred payments were represented by notes due in from 3 to 16 months, three of which of a total face value of $2,400 fell due and apparently were paid during the year 1916. The taxpayer held title to the timber rights as security for the payment of the notes, and it further appears that, regardless of that security, the notes were worth their face value and could have been sold or discounted for that amount. The profit arising from the sale was clearly income to the taxpayer for the year 1916.
With respect to the taxpayer’s planing mill in Canada, the evidence shows that it was built by the taxpayer in the year 1918, at a cost of $5,307.28, for the purpose of manufacturing articles contributing to the prosecution of the World War. At the cessation of hostilities in November, 1918, the mj.ll became useless to the taxpayer and was closed down and remained in that condition until it was sold in the year 1921 for $100. The taxpayer sustained a loss in this transaction in the amount of $5,207.28, which it is entitled to deduct in computing its net income for the year 1918. Appeal of Walcott Lathe Co., 2 B. T. A. 1231.
The evidence presented by the taxpayer also discloses that, during the year 1918, it had in its employ in its Canadian mill three men, Chambers, Piper, and Ryder, and that, when the mill was closed down in November 1918, it was indebted to them for services they had performed in that year. The exact amount of the indebtedness, however, had not been determined and was not determined and paid until some time in the year 1919. At' that time, Chambers was paid $1,069.45, Piper, $237.78 and Ryder, $182.28. The taxpayer’s books were kept on the accrual basis and, as the services were rendered and payment therefor was due in the year 1918, the amount of the indebtedness was properly accruable on the taxpayer’s books in that year and deductible in computing its net income.
The next issue is whether or not the taxpayer is entitled to deduct from gross income for the year 1918 the cost of acquiring and altering a certain building or shed, located on what is known as the Fallawav property, in Baltimore, Md. The evidence shows that it purchased this shed at a cost of $1,150 and made certain alterations and paid assessments and taxes due. The total amount expended was $2,258.43. After the alterations had been made, the shed was used as a place to store ship knees, which the taxpayer shipped to Baltimore after it closed down its planing mill in Canada. The taxpayer claims that the shed was acquired for the production of articles contributing to the prosecution of the World War, that it had little or no salvage value, and that the taxpayer is entitled to deduct the entire cost thereof in computing its net income for the *854 year 1918. However, as far as the evidence shows, the shed was still in use at the end of the year 1918 and was serving the purpose for which it was acquired. Apparently, its value in terms1 of use to the taxpayer had not diminished at the end of the year 1918, and, if we were to hold, which we do not, that the shed was acquired for the production of articles contributing to the prosecution of the World War, the taxpayer is nevertheless not entitled to an allowance for the amortization of the cost thereof in the year 1918.
With reference to the allowance to which the taxpayer is entitled for the exhaustion, wear and tear of its rafting gear in the years 1917 and 1918, we are of the opinion that the useful life of that property was not to exceed two years and that the allowance should be computed on that basis.
The only other question pre§ented by the record herein relates to the reserves set up by the taxpayer on its books at the close of the taxable years 1916, 1917, and 1918, to cover freight charges on products that had been shipped but for which freight bills had not been received. Although merely estimates, these reserves were included in.the amounts which the taxpayer deducted from gross income in the year 1918, and the effect thereof was that, in computing its net income for the years 1917 and 1918, the taxpayer deducted on account of freight charges $19,580.07 more for the year 1917, and $27,192.56 iess for the year 1918, than the amount of such charges actually paid or incurred in those years. These reserves represented an indefinite liability, which could not be determined until the freight was actually" paid, and they should not have been deducted by the taxpayer in computing its net income for the years 1917 and 1918. Only the amounts of freight charges actually paid or incurred in those years should have been deducted. The taxpayer’s income for the year 1917 should therefore be increased by $19,580.07, and that for the year 1918 should be decreased by $27,190.56.