## APPEAL OF WALCOTT LATHE CO.

*Docket No. 1142. Submitted August 10, 1925. Decided November 6, 1925.*

1. The taxpayer acquired land, constructed buildings and acquired other facilities for the production of articles contributing to the prosecution of the war, and, less than three years after the official termination of the war, sold said land, buildings, and other facilities. *Held,* that the amortization of war facilities allocable to the year 1918 is the difference between the cost of such facilities and the sale price thereof, assigning under the evidence to the land sold the same sales price as its cost. *Held,* that, in the interim between the termination of hostilities and the date the property was disposed of, no allowance for exhaustion, wear, and tear should be computed on the property not actually employed in the taxpayer's post-war business. *Held, further,* that land is not a subject for an allowance for amortization of war facilities.

2. Adjustments on account of surplus resulting from a dividend disallowed. *Appeal of L. S. Ayers & Co.,* 1 B. T. A. 1135.

Loss on account of scrapping of equipment allowed. Obsolescence of drawings not allowed for lack of evidence.

3. Improper computation of allowance for exhaustion, wear, and tear of property not the subject of amortization, *held* not proven.

*George Maurice Morris, Esq.*, for the taxpayer.
*A. Calder Mackay, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the years 1916 to 1919, inclusive, in a net amount of $7,785.02, additional taxes being asserted for the years 1916 and 1918 in the amounts, respectively, of $349.58 and $12,161.29, and overassessments being conceded for 1917 and 1919 in the amounts, respectively, of $3,318.92 and $1,406.93. The taxpayer concedes the correctness of the Commissioner's determinations in respect of the years 1916 and 1917.

### FINDINGS OF FACT.

The taxpayer is a Michigan corporation with its principal office and place of business at Jackson.

During the year 1918 the taxpayer was engaged in manufacturing articles contributing to the prosecution of the war and in connection therewith purchased land, constructed buildings, and acquired machinery and equipment at a total cost of $230,204.84. Its investment in land for that purpose was $29,070. It constructed a building known as building No. 7 at a cost of $100,594.93, a new heating plant (building, stack, and tunnels only) at a cost of $15,316.98, and acquired machinery for the purpose at a cost of $85,222.93.

The heating plant (building No. 8) and the above building No. 7 were erected upon the land above mentioned and all were sold in August, 1923, together with two cranes in building No. 7 costing $13,188, for an aggregate consideration of $87,500. The two cranes so sold were included in the machinery acquired for the production of articles for war purposes, the total cost of all of which was set forth above as $85,222.93.

Building No. 7 was completed late in 1918 and was never used for the production of war articles. It was a very substantially built steel, concrete, and brick building. The heating plant (building No. 8) was built primarily because the then existing heating plant of the taxpayer was inadequate to supply heat to the enlarged plant. The two cranes sold in connection with building No. 7 were

never used in connection with the production of war articles or afterwards, except as set forth below.

Between 1918 and 1923 building No. 7 and cranes were not used in the regular business of the taxpayer. The taxpayer rented storage space for the storage of binding twine and automobiles and stored some articles of its own in the plant. The heating plant was, after its completion, used in connection with the heating of the old plant of the taxpayer, to which it confined its regular business after 1918, and was operated at approximately 50 per cent of its capacity from the time it was completed until the date it was sold.

The Commissioner allowed amortization of war facilities on account of the above-mentioned land, building No. 7, building No. 8 and cranes in a total amount of $57,299.10, in connection with the determination of the deficiency here in question, and also allowed amortization on building No. 3, in the amount of $4,796.04, and machinery subdivided into two classes in the amounts, respectively, of $61,518.53 and $6,906.69, a total amortization of $130,520.36, from which, however, he deducted $6,203.38 on account of depreciation in building No. 8, making the net allowance for amortization in the Commissioner's determination $124,316.98. The taxpayer at all times claimed a larger amount. The Commissioner, at the hearing, amended his answer so as to deny that he was correct in allowing an amortization on account of land in the amount of $9,555.80, and asserted that the true amortization allowable was $118,896.39, dividing this allowance into buildings, $37,657.31; heating plant, $4,901.06; machinery in class 1, $69,431.33 (including the cranes above mentioned), and machinery in class 2, $6,906.69, thus departing in respect of the amortization from the determination theretofore made.

During the years 1915 and 1916 the taxpayer expended upon its old heating plant the sum of $5,818.89, upon which it deducted depreciation in 1918 in the amount of $278.35. In that year the equipment so added was scrapped in connection with the construction of the new heating plant, and there was realized from such scrapping the amount of $400. From this operation the taxpayer sustained a loss in 1918, not claimed in its return, in the amount of $5,131.54.

In the computation of the taxpayer's deficiency for the year 1918 the Commissioner decreased invested capital on account of a dividend in excess of earnings to the date thereof in the amount of $5,219.04, basing that computation upon an alleged accrual of the 1918 income and profits taxes as a measure of whether to the date of the dividend the taxpayer had current earnings sufficient to pay it.

The Commissioner in computing depreciation for the year 1918 excluded from machinery account the amount of $7,671.44, and in 1919 excluded $2,320.63, and, in addition, transferred $15,316.98

from the machinery account to the heating-plant account. No balance sheets accompany the Commissioner's deficiency letter and it is impossible to determine from the evidence submitted whether, as claimed by the taxpayer, this operation results in denying the taxpayer depreciation upon $15,316.98 properly regarded as machinery after allowance for amortization of war facilities.

### DECISION.

The deficiencies should be computed in accordance with the following opinion. Final determination will be settled on 15 days' notice, in accordance with Rule 50.

### OPINION.

JAMES: The taxpayer alleges five grounds as a basis for its appeal: (1) The improper computation of its allowance for amortization; (2) an unallowed loss on account of the scrapping of equipment in the old heating plant; (3) obsolescence of drawings; (4) an improper computation of depreciation on machinery account; and (5) an improper adjustment of invested capital on account of a dividend, all relating to the year 1918 and affecting 1919 only in respect of the obsolescence of drawings and the necessary adjustments of invested capital resulting from whatever may be the decision of the Board in connection with 1918.

Two of the above contentions are readily disposed of. The Board has held in the *Appeal of L. S. Ayers & Co.*, 1 B. T. A. 1135, that the Commissioner may not reduce invested capital on account of income and excess profits tax to accrue on the income of a taxable year in connection with the computation of the amount of earnings available for current dividends. We have also found as a fact that the taxpayer did sustain a loss in 1918 on account of the scrapping of the equipment in its old heating plant. This narrows the questions to (1) the obsolescence of drawings, (2) the amortization of war facilities, and (3) the depreciation of machinery in 1918.

The taxpayer asked for an additional allowance on account of exhaustion, wear and tear of property as a result of the alleged obsolescence of drawings for the years 1918 and 1919 of one-third of the balance after deducting regular depreciation in the amount of $2,094.81 from the asset account of $15,711.08 for the year 1918. The evidence as to obsolescence is not convincing and the determination of the Commissioner in respect of the proper allowance for exhaustion of drawings is approved.

The important question in this appeal is the correct appraisal and the amount of the allowance to the taxpayer for amortization of

war facilities under the provisions of section 234 (a) (8) of the Revenue Act of 1918, which reads as follows:

Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\*    \*    \*    \*    \*    \*    \*

(8) In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the present war, and in the case of vessels constructed or acquired on or after such date for the transportation of articles or men contributing to the prosecution of the present war, there shall be allowed a reasonable deduction for the amortization of such part of the cost of such facilities or vessels as has been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous Acts of Congress as a deduction in computing net income. At any time within three years after the termination of the present war the Commissioner may, and at the request of the taxpayer shall, reexamine the return, and if he then finds as a result of an appraisal or from other evidence that the deduction originally allowed was incorrect, the taxes imposed by this title and by Title III for the year or years affected shall be redetermined and the amount of tax due upon such redetermination, if any, shall be paid upon notice and demand by the collector, or the amount of tax overpaid, if any, shall be credited or refunded to the taxpayer in accordance with the provisions of section 252.

The above provision was substantially reenacted by section 234 (a) (8) of the Revenue Act of 1921, except that Congress inserted the date March 3, 1924, which was three years from the official termination of the war, instead of the provision in the Revenue Act of 1918, giving the Commissioner authority to redetermine the amortization at any time within three years after the termination of the war. It is conceded by both parties that any deduction allowable in the instant appeal relates to the taxable year 1918.

It appears also to be conceded that the amortization computed on building No. 3 of $4,796.04, on machinery in class 1 of $61,518.53, and on machinery in class 2 of $6,906.69 is correct. The sole issue relates to the correct computation of amortization upon the land, buildings 7 and 8, and the cranes in building No. 7 sold by the taxpayer in 1923.

At the outset, then, we have to deal with the simple situation of property acquired by the taxpayer, as set forth in our findings of fact above, at a total cost of land, $29,070; building No. 7, $100,594.93; building No. 8, $15,316.98; and two cranes costing, respectively, $8,368 and $4,820, and all, within the period granted the Commissioner in which to revise the computations of amortization, sold for $87,500. This loss of $70,669.91 is concededly to be deducted in some year and in some manner. The parties differ only as to the time and manner of deduction.

The purpose of the so-called amortization section in the Revenue Act of 1918 was fully explained in committee reports and on the floor

of the House and Senate at the time the Revenue Act of 1918 was under consideration. That Act imposed profits taxes as high as 80 per cent, to which was added a normal tax for the year 1918 of 12 per cent, bringing the maximum rate of tax to 82.4 per cent of the profits of a business in the highest bracket. Taxation as drastic as this could be imposed without serious hardship and obstruction of industry only if all proper deductions in determining profits were granted. The purpose of the high rates was, in effect, to confiscate so-called war profits and to prevent the making of extortionate profits from the war, but it was recognized that in many cases facilities had been provided for the production of articles for war use which would be useless, or nearly so, upon the termination of hostilities. Manifestly, the cost of such facilities could not be regarded as recoverable over a long life of wear and tear, but could be regarded as recoverable only against the articles which that capital was invested to produce. In other words, the extraordinary investment on account of war facilities was properly recoverable out of war profits, and Congress in sections 214 (a) (9) and 234 (a) (8) so provided.

The controversy in the instant appeal is divisible into three parts: (1) Whether land is a proper subject of amortization; (2) whether building No. 7 in the above-mentioned computation shall be decreased as to value recoverable from amortization by ordinary wear and tear, year by year, after 1918 and prior to its sale, either in the amount determined by the Commissioner or in some other amount; and (3) whether the allowance on building No. 8 shall be subject to a like reduction?

The Commissioner has computed amortization of the taxpayer by decreasing the amortizable amount for the year 1918 by depreciation on building No. 7 for four and one-half years, a total amount of $9,353.55, and upon building No. 8 for the same period in a total amount of $6,892.64, as to a portion of which latter amount he now confesses error in the rate applied. By this process he spreads the taxpayer's loss of $70,669.91 over the years 1918 to 1923, inclusive.

Reverting for the moment to the proven facts in the appeal, it is established that, so far as the taxpayer's post-war business is concerned, the land sold, building No. 7 and the cranes in it were none of them used in connection with the business. All were facilities acquired or constructed to provide articles for the prosecution of the war and all were useless to the taxpayer the moment hostilities ceased and its contracts were canceled. As to the heating plant, the evidence is that it continued to be used at one-half capacity by reason of the fact that the taxpayer had scrapped its smaller heating plant. Upon that state of facts the Commissioner asserts that depreciation should be computed upon these facilities and allowed as deductions.

in the years 1919 to 1923, inclusive, under the provisions of section 234 (a) (7), which reads:

A reasonable allowance for the exhaustion, wear and tear of property used *in the trade or business,* including a reasonable allowance for obsolescence. [Italics ours.]

The undisputed testimony is that the property here in question was not used in the trade or business of the taxpayer in any proper sense, nor can we regard it as used in the trade or business merely because, pending sale, the taxpayer chose to recover a small amount of revenue through the rental of an expensive factory as a storehouse. The only possible use in the trade or business of the taxpayer after the war of the facilities here in question was the use of the heating plant, building No. 8, for the purpose of heating its regular establishment. Even that use was limited to approximately one-half the capacity of the plant.

Reverting also to the purpose of the amortization provisions, it is clear that Congress intended that taxpayers should be permitted to eliminate from their capital accounts as an expense of producing war articles the cost of the capital assets provided for that purpose which became useless thereafter. This use of the term " amortization " is supported by Bouvier, in which it is said that the word " is used colloquially in reference to paying off a mortgage or other debt by installments, or by a sinking fund." Rawle's, Third Revision, volume 1, page 190. This use is also supported by the definition in Webster, " To clear off, liquidate, or otherwise extinguish, as a debt, usually by a sinking fund." The word chosen to express the idea was perhaps unfortunate. In most ordinary colloquial use it presupposes a period of time for amortization and is used most commonly as above noted in connection with the payment of long-term debts.

If it was the intent of Congress to permit writing off of capital assets acquired for war purposes against war profits, this purpose clearly is defeated if depreciation be imputed to such property though not used in the trade or business for the period elapsing between the cessation of hostilities and the date of disposal of the property. To allow depreciation over this period is in effect to amortize the property not against war profits but against peace profits.

Moreover, the entire allowance on account of amortization presupposes that the property will not be useful, either in whole or in part, during the post-war period, or that it will not be useful at least to the extent of its excessive cost, due to the exigencies of war construction. It seems to us, therefore, that depreciation or, in the statutory words, exhaustion, wear and tear of property used in the trade or business, in the very nature of things, can not relate to property acquired for war facilities and not useful in the post-war

period.  Section 234(a) (7) excludes depreciation upon such property from deductions, and it is unthinkable that Congress intended to provide a special allowance for the recovery of such capital expenditures in section 234(a) (8), but at the same time left the Commissioner free to impair that allowance by a forced deduction for exhaustion merely because the property could not be immediately disposed of at the close of the war.

If the above reasoning be sound, it must follow that the entire amount of loss sustained by the taxpayer upon the sale of the facilities here in question in 1923 is properly allocable to the year 1918 and should be allowed in that year in the amount of $70,669.91. When to this amount is added the amounts not in dispute as allowed by the Commissioner, the entire allowance in the year 1918 is $143,-891.17, and the deficiency should be recomputed on this basis, except as to the depreciation upon building No. 8, as set forth below.

It appears in respect of the heating plant that approximately one-half the cost was related to the war activity and that the plant was used to approximately one-half capacity during the period intervening between the cessation of the war and the sale of the property.  Under these circumstances, we are of the opinion that this plant, of equally substantial construction with that of building No. 7, should be depreciated in the years 1919 to 1923, inclusive, or, in other words, for a period of 4½ years at a rate of 2 per cent, but this depreciation should be applied only to one-half of the $15,316.98, which the property cost.  This was the amount actually computed by the examining engineer, and his figures are adopted in this regard.

It remains only to consider the Commissioner's contention that land can not be regarded as included in "buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired,  *  *  *  for the production of articles contributing to the prosecution of the present war,  *  *  *" for the purpose of computing the deduction under section 234 (a) (8).  As pointed out by counsel for the taxpayer, however, the position of the Commissioner, even though correct in this particular, is an entirely moot one in this appeal, since the evidence is to the effect that the land at all times had a value of $29,070, and if it be regarded as having been sold for cost in the total consideration of $87,500 for all the facilities sold, there results merely a decrease in the amount realized upon the buildings and cranes, with no difference in the net result.

As indicated in the findings of fact upon the third issue, it is impossible to determine from the evidence whether the Commissioner in fact did exclude an amount of machinery not subject to amortization from the computation of depreciation allowable thereon through an auditor's error in interpreting the account called "heat-

ing plant." Inasmuch, however, as we have allowed the entire amortization in the year 1918 on account of the heating plant, and inasmuch as the Commissioner allowed liberal rates of depreciation upon machinery, we are of the opinion that no adjustment is necessary on this account, since the total allowance by the Commissioner for exhaustion, wear and tear of property used in business appears to have been reasonable.