# DECISIONS

OF THE

# UNITED STATES BOARD OF TAX APPEALS.

JOHN POLACHEK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7678. Promulgated September 9, 1927.

1. The amortization provision must be construed to preserve its national significance, whatever may be the result of such construction locally for a single year upon a single taxpayer.

2. The amortization provision is alleviative and, so far as consistent with its broad purpose, it should be specifically applied liberally.

3. The amortization deduction is an extraordinary one growing out of the war, and, unlike the deductions for exhaustion, obsolescence or loss, is unrelated to the normal determination of net income.

4. The amortization deduction was provided, not as an essential factor in the determination of income, but as a method of reducing tax, and to relieve the taxpayer from an unbalanced wartime investment. It should reasonably be directed against the burdens of war taxation.

5. The word "reasonable" in the amortization provision is elastic, but it implies a relation between the broad purpose of the Act and its specific application, and must be construed to promote the intendment of the provision.

6. The word "amortized," although it may ordinarily connote a period of years, does not require that the deduction be in any case spread over more than one year if this is not in consonance with the statutory intendment.

7. Where the petitioner erected a building during 1918 for war purposes, but the building was never used for the production of articles contributing to the prosecution of the war, all orders for such articles having been canceled immediately after the signing of the Armistice in November, 1918, *held*, the amortization deduction was properly confined to that year, although the amortizable cost was greater than the income against which it was applied.

*Emanuel H. Reichart, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

1

This proceeding is for the redetermination of deficiencies of $2,380.15 and $7,038.56, income taxes for 1920 and 1922, respectively, arising from the respondent's disallowance of deductions for the amortization of the cost of wartime facilities. The parties stipulated that the facts are the same as those in the prior proceeding brought by this petitioner for 1919, *John Polachek*, 3 B. T. A. 1051.

### FINDINGS OF FACT.

The petitioner is an individual residing at New York City, N. Y.

The petitioner, in May, 1910, engaged in the business of designing, casting, and erecting ornamental bronze and iron work, under the name John Polachek Bronze & Iron Works, with a capital of $23,000, and maintained and operated a plant for such purposes at Long Island City, N. Y. About September, 1910, he lost about $16,000, due to the failure of two banks in which he had money on deposit, and was left with machinery, equipment, and materials that had cost him about $7,000, but without any money to meet his pay roll and other expenses. He then went to his brother, Charles N. Polasky, and requested a loan of sufficient money to enable him to continue his business. Polasky at first refused to lend the petitioner any money, but finally agreed to lend and did lend him $7,000, on the following conditions:

That Polasky should receive one-half of the net profits of the business; that neither the petitioner nor Polasky should withdraw any profits from the business during the period of 10 years; that if the business did not produce any profits the taxpayer would, in any event, pay to Polasky the said sum of $7,000, with interest at the rate of 6 per cent; and that the business should be carried on under the sole direction of the petitioner.

The business was conducted by the petitioner, under the agreement of 1910, until March 1, 1919. Shortly before that date Polasky became dissatisfied because he was not entitled to withdraw any money from the business and had not received any return on his loan, and he therefore proposed that the petitioner buy him out, and the petitioner did buy out his interest in the business for $50,000.

During the year 1918 the John Polachek Bronze & Iron Works received orders for castings which were not of the kind ordinarily made in the business then carried on by it and which were to be used in the building of ships for the United States Shipping Board Emergency Fleet Corporation, and thereby to contribute to the prosecution of the World War. In order to provide for the production of these castings the John Polachek Bronze & Iron Works constructed, during the year 1918, an additional building to be used as an iron

foundry. The building was begun in April, 1918, and was completed in December, 1918. The building was never actually used in the production of articles contributing to the prosecution of the World War, all orders on hand for the production of such articles having been canceled immediately after the signing of the Armistice in November, 1918. The building in question cost $50,755.23, and the land on which it was erected cost $3,400. Of the construction cost of the building, the amount of $16,186.14 was actually paid in the year 1918, and the balance, $34,569.09, was paid in the year 1919. The building was not in use from the time it was completed until about September 1, 1921, at which time about 40 per cent of its capacity was put into use as an iron foundry.

The John Polachek Bronze & Iron Works filed an income and profits-tax return for the year 1918 as a partnership. Its books of account were kept on the accrual basis.

The petitioner, in computing his net income for the year 1919, deducted for the amortization of the building in question the amount of $12,688.80. The deduction was disallowed by the Commissioner, on the ground that the amortization period of the petitioner ended December 31, 1918, and that deduction for amortization should be allowed only for the year 1918.

### OPINION.

STERNHAGEN : The petitioner now presents for 1920 and 1922 precisely the same demand for an amortization deduction as the Board considered and decided in respect of the calendar year 1919, *John Polachek*, 3 B. T. A. 1051, and ardently insists that the former decision on that point was incorrect and should therefore be overruled. To this end, his argument goes not alone to the merits of his present claim under the statute, but also to demonstrate the alleged fallacy of reasoning in the opinions both in *Walcott Lathe Co.*, 2 B. T. A. 1231, and his earlier case. The arguments have elicited further consideration.

The parties have agreed that the facts are in terms the same as those found by the Board in the earlier report. The building, completed in December, 1918, at a cost of $50,755.23, of which $16,186.14 was paid in 1918 and $34,369.09 was paid in 1919, although it was constructed for the production of articles contributing to the prosecution of the war, was never so used and remained idle until about September 1, 1921, when about 40 per cent of its capacity was used as a foundry. Upon these facts the petitioner predicates his argument that in 1920 he was entitled, under section 214 (a) (9) of the

Revenue Act of 1918,[1] to an amortization deduction of $12,688.80, and that in 1922 he was entitled, under section 214 (a) (9) of the Revenue Act of 1921,[2] to an amortization deduction of $10,270.04. These amounts he claimed on his return for the years in question, and the respondent's disallowance of these deductions gave rise to the determination of the deficiencies in question, aggregating $9,418.71. The respondent, as in the earlier case, conceding that the facts are within the purview of the statutory provision for amortization, adopts the view that such amortization as the facts indicate is only deductible for the year 1918 and not for any later year. The petitioner contends that as a matter of law he is entitled to apportion the amortizable cost among the several years until September, 1921, when the facility became to some extent useful. To deprive him of this, he says, is to refuse the " reasonable deduction " granted by the statute, and he seeks to drive home this deprivation by referring to the alleged fact (not contained in the record) that the net income for 1918 is insufficient to absorb the amortizable cost.

The amortization deduction of the statute has from the time of its first enactment in the Revenue Act of 1918 been the subject of constant and widespread discussion. Its terms are so broad and general and its benefits so variously and widely sought, that its application

---

[1] SEC. 214. (a) That in computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

(9) In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the present war, and in the case of vessels constructed or acquired on or after such date for the transportation of articles or men contributing to the prosecution of the present war, there shall be allowed a reasonable deduction for the amortization of such part of the cost of such facilities or vessels as has been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous Acts of Congress as a deduction in computing net income. At any time within three years after the termination of the present war, the Commissioner may, and at the request of the taxpayer shall, reexamine the return, and if he then finds as a result of an appraisal or from other evidence that the deduction originally allowed was incorrect, the taxes imposed by this title and by Title III for the year or years affected shall be redetermined; and the amount of tax due upon such redetermination, if any, shall be paid upon notice and demand by the collector, or the amount of tax overpaid, if any, shall be credited or refunded to the taxpayer in accordance with the provisions of section 252.

[2] SEC. 214. (a) That in computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

(9) In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the war against the German Government, and in the case of vessels constructed or acquired on or after such date for the transportation of articles or men contributing to the prosecution of such war, there shall be allowed, for any taxable year ending before March 3, 1924 (if claim therefor was made at the time of filing return for the taxable year 1918, 1919, 1920, or 1921) a reasonable deduction for the amortization of such part of the cost of such facilities or vessels as has been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous Act of Congress as a deduction in computing net income. At any time before March 3, 1924, the Commissioner may, and at the request of the taxpayer shall, reexamine the return, and if he then finds as a result of an appraisal or from other evidence that the deduction originally allowed was incorrect, the income, war-profits, and excess-profits taxes for the year or years affected shall be redetermined; and the amount of tax due upon such redetermination, if any, shall be paid upon notice and demand by the collector, or the amount of tax overpaid, if any, shall be credited or refunded to the taxpayer in accordance with the provisions of section 252.

has given rise to numerous delicate questions. The amounts involved have been relatively large and have thus provoked spirited differences. Some of these have already been brought before the Board and have been decided. *Walcott Lathe Co.*, 2 B. T. A. 1231; *John Polachek*, 3 B. T. A. 1051; *G. M. Standifer Construction Corporation*, 4 B. T. A. 525; *Manville Jenckes Co.*, 4 B. T. A. 765; *Standard Refractories Co.*, 6 B. T. A. 24; *American-Hawaiian Steamship Co.*, 7 B. T. A. 13. A statutory provision so general in its scope and affecting many interests in varying degrees and different ways, must be construed in an endeavor to preserve its national significance, whatever may be the effect of such construction locally for a single year upon a single taxpayer.

There can be no question that the provision is alleviative, and that, so far as consistent with its broad purpose, it should be specifically applied liberally to promote the relief which it was designed to afford. Liberality in construction, however, may not transcend a consistent adherence to its primary purpose. It is unfortunately true of legislative draftsmanship that in seeking to provide for the many it may fail to reach a few. This is the history of litigation. Cf. *La Belle Iron Works* v. *United States*, 256 U. S. 377; 3 Am. Fed. Tax Rep. 3113. It is well recognized that courts are denied the power, in order to remedy an apparent hardship, to distort the statute beyond the scope of its terms.

It is necessary, therefore, to determine first the general purpose of the amortization provision, insofar as its language permits such consideration, before it is possible to determine the rights of the particular taxpayer under it. The inversion of this by considering first the particular circumstances of the taxpayer, irrespective of the many taxpayers otherwise situated, would obviously be improper. The amortization deduction is an extraordinary one, born of the peculiar circumstances of the war and quite unrelated to the normal determination of net income. It is not one of the factors which year in and year out affect income. Were it not for the war, its high cost of materials and construction, its demands for articles unsuited to peace, its complete absorption of the industries of the nation for its sovereign purpose at whatever cost, and the inevitable post-war reaction, there would have been no occasion for this so-called deduction. In this, it is unlike the deduction for exhaustion, wear and tear and obsolescence provided by the immediately preceding subdivision of the same section of the Revenue Act of 1918, i. e., section 214 (a) (8),[3] and unlike the deduction for losses in subdivision (4).[4] The amor-

---

[3] Sec. 214. (a) That in computing net income there shall be allowed as deductions:
   *       *       *       *       *       *
   (8) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.

[4] (4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business.

tization deduction, so far as can be ascertained from the meager legislative history open for our consideration, was enacted not because it was believed an essential factor in the determination of income, but rather because it was believed to be a fair, even though extraordinary, method of reducing tax. It is plain 'that income is not normally affected by an inflated capital cost, whether attributable to war or otherwise. Section 215 (b)[5] expressly prohibits the deduction of such capital outlay. Normally such capital investment is kept unimpaired by taking from net income annually, through allowance for exhaustion, wear and tear and obsolescence, an amount sufficient to aggregate its cost at the end of its life. As to the war facilities, however, the taxpayer who had invested extensively was permitted something greater than this in an effort to relieve him from an unbalanced investment incurred during the war and beyond his peacetime needs. As said in *Walcott Lathe Co.*, *supra*, this extraordinary deduction was actuated by a purpose to afford relief from the high taxes of the war period and was in its nature something different from the usual depreciation deduction.

In the depreciation deduction, taxpayers already had a method of reflecting in income the anticipated physical disappearance of their capital; and in obsolescence, the anticipated effect of economic conditions. In the loss provision, they had the reflection of a present disappearance as distinguished from one anticipated. It would be both irrational and untrue to assign to the amortization deduction the attributes already found in depreciation, obsolescence or loss. Clearly amortization must be something different from these, or it is nothing. This difference we find in the very genesis of the amortization provision. It arose out of the war exigencies as a relief from the drastic burdens which they imposed, and should be construed so as to provide for all taxpayers as a whole such relief in greatest measure.

It is not improper to consider the possible situations reasonably within the scope of the application of the provision. Should those whose inflated investment was devoted entirely to war purposes at large profits and was useless immediately or shortly after the Armistice, so that they had no net income except that subject to high taxes during 1918, be called upon to spread the deduction over the subsequent barren years? Such a taxpayer with far greater reason than that of this petitioner could insist that the income derived during the war years and subject to the high war taxes was intended to be and fairly should be the medium for relief. *Walcott Lathe Co.*, *supra*. This would likewise be true of the taxpayer whose investment in war

---

[5] Sec. 215. That in computing net income no deduction shall in any case be allowed in respect of—

\*          \*          \*          \*          ⊁          \*          \*

(b) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate.

facilities was used in war production, such as ships, for some time after the Armistice. Such a taxpayer would, for several years after the Armistice, derive income which was no less directly related to the war and attributable to war facilities. See *Standifer Construction Corporation*, *supra*, and *Manville Jenckes Co.*, *supra*. These taxpayers may with equal force urge that the deduction would be unreasonable and therefore not within the statute if it were required to be spread over years having no relation to the highly taxed war income. It may fairly be said that an extraordinary war deduction should reasonably be directed against the extraordinary burdens of war taxation.

The word "reasonable" is, of course, elastic. It has its proper place in the Act, as is shown by the several cases already cited. But because the deduction must be reasonable is no warrant for permitting it to be irrational. It implies a relation between the broad purpose of the Act and its specific application. It precludes generosity no less than parsimony. It is only reasonable if it promotes the intendment of the statute, and only in the light of such intendment can the word be construed and applied. It would be quite the reverse of reasonable to permit the construction of the statute to depend upon the adventitious circumstance that the taxpayer had no income in the year when he might otherwise have a deduction. This may happen as to any of the statutory deductions. The statute was designed to give relief and not to confer bounty, and if a taxpayer is otherwise free from tax, whether because of lack of income or excess of deductions, he may not complain because he can not avail himself of the relief. We must assume that Congress intended to grant relief from tax and that if there be no tax there is no cause for relief; but it is not to be assumed that Congress intended to bestow tax exemption merely because the taxpayer was fortunate enough to need no relief. To confine the deductions to 1918 in the present case is to allow a reasonable deduction as provided by the statute.

This application of the statute is not in effect to penalize a taxpayer situated as this petitioner. Petitioner happens to be free from high tax because he has no high income; and it is not a penalty that in the ensuing years he is taxed equally with others upon his normal income. Nor does this, as he contends, impose an artificial limitation upon the statutory relief. Instead it is merely the restriction of the relief within the scope intended to be covered by the statute.

Some point is made that the word "amortize" itself connotes a period of years, which is inconsistent with the application of the deduction to a single year. The word is not so definitive, and, since the broad terms of the statute necessarily require interpretation, the word must be applied in consonance with the statutory intendment as we understand it. So long as there are cases where the period of

war production, war income, or other war circumstances, extends beyond 1918 (cf. *Standifer Construction Corporation, supra*), so that the deduction may be spread, the word fits the purpose. The petitioner's contention would require that in no case could the deduction be confined to a single year, a view which, as we have seen, would more often defeat the statutory deduction than afford the intended relief. The word is sufficiently adapted to the remedy provided so that it may apply, as the statute says, to " the year or years affected." A reasonable deduction may, under the circumstances of each case, be either spread over a period or confined to a single year. The facts here indicate no reason for a spread.

The petitioner argues his right to spread the cost over the years until the time in September, 1921, when he began to use his building to the extent of 40 per cent of its capacity. This seems to exclude an allowance for 1922, although the 1922 deficiency is complained of in the petition. But September, 1921, has no real significance as a terminal date of the amortization period. Mark that it is the unused 60 per cent which petitioner treats as the measure of amortized cost. This, so far as the facts disclose, is still unused. Why then, if spread at all, should the spread be limited by the date when the remaining 40 per cent was used? If, as petitioner argues, the deduction for unused facilities may offset the income of ordinary years having no relation to war expenditure, war production, war income, or other war circumstances, there would be no reason to limit the years by the date when the nonamortizable part of the facilities was first used. In other words, if a reasonable deduction is not restricted by war circumstances, then there is no restriction whatever; and it is unbelievable that Congress intended to leave it to the desire of each taxpayer influenced by his particular tax liability. The only fact in respect of the cost of these facilities which occurred after 1918 was the final payment which was made in 1919. But since his income was computed by accruals rather than payments, it must be assumed that this expenditure was reflected in 1918, the year of its commitment. Thus 1918 is the only year affected by the war or which contained any relation between petitioner's income and his war outlay. In that year counsel says, in his brief (but outside the record), that petitioner's income was $20,068.84, and therefore insufficient to absorb the entire amortizable cost. We must hold, however, that this fact may not serve to shift the deduction or any part thereof to the later years. The stipulated facts do not, in our judgment, establish a reasonable deduction for the years 1920 and 1922 now in question, and the respondent correctly disallowed the amortization claimed.

> *Judgment will be entered accordingly for the respondent.*

Considered by MORRIS and ARUNDELL.