## KELLY–SPRINGFIELD TIRE CO. v. UNITED STATES.

No. 5491.

Circuit Court of Appeals, Third Circuit.

Nov. 7, 1935.

On Rehearing Jan. 21, 1936.

THOMPSON, Circuit Judge, dissenting.

Moses & Singer, of New York City, S. Leo Ruslander, of Pittsburgh, Pa., Harrison B. McCawley, of Washington, D. C., and Jacob L. Newman, of Newark, N. J. (Morgan S. Kaufman, of Scranton, Pa., H. G. Kopald, of New York City, and R. J. Cleary, of Pittsburgh, Pa., of counsel), for appellant.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and Carlton Fox, Sp. Assts. to Atty. Gen., for the United States.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a judgment of the District Court disallowing a claim of the appellant for amortization of the cost of certain facilities acquired for the production of articles contributing to the prosecution of the war.

In 1918 and for many years prior thereto, the appellant was engaged in the manufacture of rubber tires. In computing its net income for 1918 it claimed an allowance for the year of a reasonable deduction for amortization of the cost of certain buildings, machinery, equipment, and other facilities constructed, erected, installed, or acquired by it on or after April 6, 1917, for the production of articles contributing to the prosecution of the war against the German government under section 234 (a) (8) of the Revenue Act of 1918 (40 Stat. 1078), which provides that:

"(8) In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the present war, and in the case of vessels constructed or acquired on or after such date for the transportation of articles or men contributing to the prosecution of the present war, there shall be allowed a reasonable deduction for the amortization of such part of the cost of such facilities or ves-

sels as has been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous Acts of Congress as a deduction in computing net income."

The taxpayer claimed a deduction for amortization under this section for the year 1918. The Commissioner allowed $682,044.99. This was unsatisfactory to the taxpayer, and it brought suit to recover $799,106.99 with interest on account of an overpayment of income and profits taxes for that year. The amount sued for was increased to $1,927,241.67 by plaintiff's reply to the counterclaim of the United States. The District Court held that no part of the cost borne by the appellant for its facilities constituting its plant in Cumberland, Md., was amortizable, and so did not make any allowance whatever for these facilities.

From its organization in 1899 the principal business of the appellant consisted of the manufacture and sale of rubber tires for automobiles and other vehicles. Its principal plant was at Akron, Ohio. During the years 1915 and 1916 its business increased greatly. This was due to the supplying of tires by its branches and agencies to the United States government for the Mexican invasion and to automobile manufacturers who were making trucks for France, England, and Belgium. This increase taxed appellant's facilities to the utmost. In consequence in 1915 appellant's officers and directors felt that a new plant should be built to replace its existing facilities and to supply the increasing demand for its tires. It seemed necessary to build an entirely new plant because there was no room for expansion of the plant at Akron.

An investigation of available locations was made, and in the spring of 1916, negotiations were begun with the city of Cumberland, Md., with the result that on October 4, 1916, appellant entered into an agreement with the Cumberland Development Company, a corporation organized by public-spirited citizens of Cumberland, whereby appellant agreed to build a new plant at Cumberland to take the place of its plants at Akron and elsewhere. In order to induce the appellant to locate at Cumberland and move its various plants there, the city agreed to give it $750,000 and a site for the plant. The new factory was to cost a minimum of $1,500,000, which would employ three thousand persons within two years after its completion. A contract was entered into by the city and appellant for the extension and improvement of the streets of the city. The Baltimore & Ohio Railroad Company under an agreement with the appellant relocated its tracks so as to have them traverse the site of the plant.

The feeling in this country in 1915 and 1916 ran high in favor of entering the World War on the side of the allies, and by November 4, 1916, when the appellant entered into a contract for the erection of the plant, it was practically certain that we would enter into the war and that there would be a great demand for the products of the appellant.

In 1916 and 1917 it had various orders for tires from the War Department. All this was making a new plant desirable, if not necessary. Its engineering department estimated in 1916 that the erection of the new plant would cost about $2,500,000. In November or December of that year outside engineers were employed, and their first estimate was $4,800,550 exclusive of engineering fees and other indirect costs.

In March of 1917 the appellant concluded to go ahead and put up the factory, and on April 2, 1917, it decided to break ground for the plant not later than April 10th. This it did on April 11th. It was expected at that time that the plant would be completed by July, 1918, but in the meantime, on April 6, 1917, war had been declared against Germany, and structural steel could not be secured because all the steel that the plants of the country could produce was required for the building of ships for the government. This, of course, delayed the work. However, in February, 1918, it was able to get structural steel for its mechanical building, which was finished when the Armistice occurred on November 11, 1918. At that time the grading for the entire plant was practically completed, the sewer lines were laid, and the underground work was completed. During the year of 1918 war orders represented 40 per cent. of appellant's business, which had expanded from 1,000 tires to 5,000 a day. This was due to the stimulus of the war in Europe, for purely peaceful, domestic consumption would not have created such a demand.

The period following the Armistice was a time of great uncertainty. No one seemed sure of just what would take place. The appellant was in a dilemma as to

whether to stop or go on with its plan of building and complete its contracts. Among the losses which it had to consider if it stopped were the following:

| | |
|---|---:|
| Loss on plant site | $ 75,000.00 |
| Loss on expenditures and purchase orders | 740,219.86 |
| Loss on Cumberland Development Company contract... | 625,462.03 |
| Loss by way of damages to the city of Cumberland or Cumberland Development Company on account of expenditures made by the city | 758,000.00 |
| Loss by way of damages to the Baltimore & Ohio Railroad Company, for the Cumberland Development Company, on account of expenditures to be made by the Baltimore & Ohio Railroad Company | 257,514.40 |
| Loss by way of general damages | 150,000.00 |
| | $2,606,196.29 |

This was exclusive of loss for good will. After mature consideration the appellant concluded that on account of the state of the work, the commitments which it had made, and the actions which would be brought against it, to stop would be more expensive than to go ahead and complete the plant. Accordingly, it went ahead, and the plant, which it was estimated in 1917 would cost $4,800,550, actually cost $13,950,351.92, which was doubtless due to the high prices caused by the war.

The total cost of that portion of the Cumberland plant which appellant claims constitutes the facilities acquired by it for the production of articles contributing to the prosecution of the war against the German government was $5,557,859.63, but the District Court held that these facilities were not amortizable and that appellant was not entitled to any amortization whatever for them. The case is here on appeal from the judgment to that effect entered by the court below.

Do the facts in this case bring it within section 234 (a) (8) of the Revenue Act of 1918 as amended by the Act of 1921, § 234 (a) (8), 42 Stat. 254), when both the facts and the law are reasonably construed with the idea of giving effect to the intent and purpose which the Congress had in mind when it passed the statute, providing a deduction for amortization of war facilities? The taxpayer can ask nothing more, and anything less would be unfair.

The amortization deduction was provided because it was believed to be a fair, though extraordinary, method of reducing taxes for the taxpayer who had incurred extensive expenses in producing articles which contributed to the prosecution of the war. In normal times, "capital investment is kept unimpaired by taking from net income annually, through allowance for exhaustion, wear and tear, and obsolescence, an amount sufficient to aggregate its cost at the end of its life. As to the war facilities, however, the taxpayer who had invested extensively was permitted something greater than this in an effort to relieve him from an unbalanced investment incurred during the war and beyond his peacetime needs. * * * This extraordinary deduction was actuated by a purpose to afford relief from the high taxes of the war period and was in its nature something different from the usual depreciation deduction." John Polachek v. Commissioner, 8 B.T.A. 1. When this provision for amortizing the loss incurred on account of extensive expenditures for facilities to produce articles contributing to the prosecution of the war was passed, the taxpayer already had provisions allowing deductions for depreciation, obsolescence, and exhaustion. The deduction for amortization was something in addition to these. Deduction for amortization arose out of the exigencies of the war as a relief from the heavy burdens which they imposed.

■ The statute should receive a liberal construction in order to provide for all taxpayers relief from the abnormal conditions incident to the prosecution of the war. John Polachek v. Commissioner, 8 B.T.A. 1. In speaking of this amortization provision, the Court of Claims, in the case of Palmer, Trustee, v. United States, 67 Ct.Cl. 648, 654, said: "When a privilege or concession is granted, as in this statute, it is the duty of the court to give the largest and broadest construction in favor of the concession which the language used will allow in order to afford the relief which the context indicates was intended. The evident purpose of the statute was to enable taxpayers of the class named who had incurred excess cost over pre-war or normal times to apply such ascertained excess in reducing income re-

ported for taxation, and to relieve the taxpayers from this income tax until said excess had been absorbed. They were thus placed on an equal footing with those who had constructed their plants prior to the war or under normal conditions."

There are only two questions in this case: (1) Were the facilities acquired after April 6, 1917? (2) Were they acquired for the production of articles contributing to the prosecution of the war?

1. The statute plainly provides that facilities acquired on or after April 6, 1917, for the production of articles contributing to the prosecution of the war are entitled to a deduction for amortization. "Facilities" as used in the statute embraces "buildings, machinery, equipment," and other similar things. Were the buildings, machinery, and other equipment here in question acquired by the appellant after April 6, 1917? That they were contracted for before then is immaterial. The contract was purely executory until it was performed. It was the *performance* and not the *execution* of the contract which constituted the acquirement of the facilities.

The facilities were "acquired" when the contract was performed and not until then. Many a contract for the purchase of property is executed, but never performed, and the property is never acquired. The date when the facilities were "acquired," which was after April 6, 1917, comes within the terms of the statute and fulfills one condition prescribed by Congress for the deduction for amortization. The Commissioner so construed the statute in 1918 in Regulations 45, Article 182, which provided that: "In the case of property, the construction or installation of which was commenced prior to April 6, 1917, and completed subsequent to that date, amortization will be allowed with respect only to the cost incurred on or after April 6, 1917."

He likewise construed the provision in 1920 in Article 183 of the Regulations, which reads as follows: "In the case of property the construction, erection, installation, or acquisition of which was commenced before April 6, 1917, and completed subsequent to that date, amortization will be allowed with respect only to that part of the cost incurred on or after April 6, 1917, and which was properly entered on the books of the taxpayer on or after that date."

In Article 183 of Regulations 62, the Commissioner again construed this section of the Act of 1921, which was the same as the Act of 1918. He said: "In the case of facilities the construction, erection, installation or acquisition of which was commenced before April 6, 1917, and completed subsequent to that date, amortization will be allowed with respect to only that part of the cost incurred on or after April 6, 1917, which was (or should have been) properly entered on the books of the taxpayer on or after that date."

He further said in Article 184 of the same Regulations: "The total amount of the amortization allowance is the difference between the original cost of the property if constructed, erected, installed, or acquired on or after April 6, 1917; or if acquired partly before and partly after April 6, 1917, then that part of the cost incurred on or after April 6, 1917, * * * and the value of the property on either of the bases indicated below; * * *"

Under this repeated construction of the Commissioner, if the facilities were contracted for and their erection was actually commenced *before* April 6, 1917, deduction for amortization was allowed for that part of the cost actually incurred *after* April 6, 1917, and the passage by Congress of the provision for amortization without material change after the construction given to it by the Commissioner is persuasive that this construction has legislative sanction.

The Commissioner, however, took the opposite view in 1926 in the case of Appeal of Manville Jenckes Company, 4 B.T.A. 765. He then changed his position and held that if the facilities were contracted for *before*, but "acquired" *after*, April 6, 1917, they could not be amortized because it was a peace-time project. Notwithstanding the fact that the contract in that case was entered into six months before April 6, 1917 (when the taxpayer did not have any *war* contracts), and the facilities were largely acquired before that time, the Board of Tax Appeals reversed the Commissioner and held that the facilities acquired on or after April 6, 1917, were amortizable, and the Commissioner acquiesced in that decision. The same position was taken by the Commissioner in the case of Appeal of Standard Refractories Company, 6 B.T.A. 24. Again the Board allowed amortization and the Commissioner again acquiesced.

Accordingly it seems to us that the taxpayer has complied with the first condition, the acquirement of the facilities after April 6, 1917, necessary for the allowance of the deduction for amortization.

■ 2. The second question is whether or not the facilities were acquired for the production of articles contributing to the prosecution of the war.

The learned trial judge recognized the principle that the taxpayer was entitled to a liberal construction of the statute, but failed to apply it to the evidence in the solution of this question. He held that unless "the taxpayer either changed its status or entered upon a new venture after April 6, 1917, with the intent and purposes of producing articles for the prosecution of the war," no amortization deduction could be allowed.

The question here is simply whether or not the taxpayer acquired these facilities "for the production of articles contributing to the prosecution of the present war." Many a company "changed its status," in that it enlarged its plant in order to produce articles which contributed to the prosecution of the war. Others "entered upon a new venture," in that they either modified their plants, changed the character of their operation, or acquired new facilities, and entered into a new business of producing something which the Government needed for the prosecution of the war. Did the taxpayer do either of these? If it did, since it "acquired" its facilities after April 6, 1917, it is entitled to a reasonable deduction for the amortization of such part of the cost of such facilities as it has borne.

Admittedly the appellant's product, rubber tires for motor vehicles, was an "article" which "contributed" to the prosecution of the war, and there is no question but that the facilities acquired on or after April 6, 1917, at Cumberland were for the production of tires.

It is true that the appellant's business increased steadily in 1915 and 1916. On November 4, 1916, the officers of the company entered into a contract with the Cumberland Development Company looking toward the erection of its plant. The conditions during all this time were abnormal, far from peace-time conditions. There was a great and continuously growing feeling during that time that we would enter the war on the side of the allies. The ever-increasing volume of the appellant's business was not a peace-time demand. It was due to the influence which the war in Europe had upon American industry. During 1916, as above stated, the appellant was making and supplying tires to automobile manufacturers who were making trucks and automobiles for France, England, and Belgium. But the entrance of the United States into the war increased the demand for the appellant's products and taxed its facilities to the utmost. Its business, as we said before, increased from 1,000 to 5,000 tires a day. The facilities here in question were originally intended for the production of articles contributing to the prosecution of the war either of the allies, or, in anticipation, were intended for the production of articles contributing to the war when we had entered into it. In either case, however, when they were actually *acquired,* we had entered into the war, and they were then acquired for the production of articles contributing to the prosecution of the war which was then no longer that of the allies alone, but had become ours also. After the United States entered into the war, the appellant's operations were directed by the government. Appellant then believed that it would be one of the principal suppliers of tires to the government. At that time it had not so far proceeded with its plans of construction that it could not have changed them. But it did not. It went ahead and acquired the facilities for the production of articles which contributed to the prosecution of the war. It thus fulfilled the second condition, which entitles it to the allowance of a reasonable deduction for the amortization of such part of the cost of the facilities acquired as it bore.

Under the evidence in this case, the conclusion is inescapable that the plaintiff *acquired* facilities after April 6, 1917, for the production of articles which contributed to the prosecution of the war. This being so, it is entitled to the allowance of a reasonable deduction for the amortization of such part of the cost of the facilities as was borne by it.

It follows that the judgment must be reversed and a new trial awarded.

THOMPSON, Circuit Judge (dissenting).

538

The learned judge of the court below in his findings of fact and conclusions of law has expressed views with which I am in entire accord. I am therefore constrained to dissent from the majority opinion.

On Rehearing.

DAVIS, Circuit Judge.

This case is here on motion of the Kelly-Springfield Tire Company to amend the opinion heretofore filed in this case reversing the judgment of the District Court and awarding a new trial. The appellant asks us now to amend the opinion by striking from the last paragraph the words, "It follows that the judgment must be reversed and a new trial awarded," and by substituting therefor these words: "It follows that the judgment must be reversed and the case remanded to the trial court with instructions to proceed further, on the record made in the trial court, in conformity with this opinion."

This suit was brought to secure a deduction for amortization of the cost of appellant's plant at Cumberland, Md., under section 234 (a) (8) of the Revenue Act of 1918 (40 Stat. 1078). There were really two questions involved in the case: (1) Whether or not the facilities in question were acquired after April 6, 1917; and (2) whether they were acquired for the production of articles contributing to the prosecution of the war.

We held that the facilities for the cost of which the plaintiff is seeking a deduction for amortization were acquired after April 6, 1917, but that the learned District Judge failed to apply a liberal construction of the statute, to which the taxpayer was entitled, to the second question. The findings are perfectly clear. The government says that, "It is apparent that the trial court took great pains to find the evidentiary facts in detail." The error of the court was in construing the statute in its application to these facts. What it should now do is to apply the statute as we construed it to these "evidentiary facts" in finding the deduction for amortization of the cost of the facilities to which the appellant is entitled, and in doing this a new trial is not necessary. All it need do is to proceed on the record as already made in the District Court in conformity with the opinion of this court heretofore filed in this case.

The motion of the appellant is granted.